UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

HENRY BRESILIEN,

                                                Plaintiff,

-against-

THE CITY OF NEW YORK ("NYC"), THOMAS BRADLEY, individually and in his capacity as a Lieutenant in the FDNY, MICHAEL GALA, individually and in his capacity as Chief of Personnel in the FDNY, "JOHN DOES" and "JANE DOES," said names being fictitious and presently unknown persons believed to be personnel of the FDNY,

                                                Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERAL FACTS**

16 CV 04857 (AMD) (RER)

        Pursuant to Local Rule 56.1 of the Civil Rules of the United States District Court for the Eastern District of New York, Defendants, City of New York (the "City") and Thomas Bradley ("Bradley") (collectively, "Defendants"), submit the following Statement of Undisputed Material Facts as to which they contend there is no genuine issue to be tried.

### A. Procedural History

        1. In this action, Plaintiff, Henry Bresilien, alleges retaliation for his status as a class member in *United States v. City of New York*, 07 Civ. 2067 (E.D.N.Y.) ("FDNY Firefighter Examination Lawsuit") in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), 42 U.S.C. § 1981 ("Section 1981") and 42 U.S.C. § 1983 ("Section 1983") and alleges disparate treatment on the basis of his race (African-American) in violation of 42 U.S.C. § 1981 ("Section 1981") and 42 U.S.C. § 1983 ("Section 1983"). *See* Dkt. No. 16, First Amended Complaint, dated March 13, 2017 ("FAC"), *passim*.

2. Plaintiff further alleges claims that Defendants violated his rights under the Fourteenth Amendment by terminating his employment without due process. *See* Dkt. No. 16, FAC, *passim*.

3. Plaintiff further alleges that the individual defendants, Michael Gala, Bradley, and "John Does" and "Jane Does" intentionally or negligently inflicted emotional distress in terminating his employment and that the City, Michael Gala, Bradley and "John Does" and "Jane Does" are in contempt of the remedial order in the FDNY Firefighter Examination Lawsuit. *See* Dkt. No. 16, FAC, *passim*.

4. On May 9, 2017, Defendants moved to dismiss the FAC. *See* Dkt. No. 18, Motion to Dismiss; *see also* Dkt. No. 25, Motion for Partial Reconsideration.

5. Following the Court's Memorandum Decision and Order, dated February 20, 2018, granting in part and denying in part Defendants' motion to dismiss, the only remaining claims in this action are: Plaintiff's Title VII retaliation claims against the City with respect to his January 14, 2015 termination; Plaintiff's NYSHRL and NYCHRL retaliation claims against the City and Bradley with respect to allegations occurring after August 30, 2013; Plaintiff's Section 1983 retaliation claims against Bradley with respect to allegations occurring after August 30, 2013; Plaintiff's Section 1983 race discrimination claims against the City and Bradley with respect to allegations occurring after August 30, 2013; Plaintiff's Section 1981 race discrimination claims against the City and Bradley; Plaintiff's Section 1981 retaliation claims against Bradley; and Plaintiff's procedural due process claims under 42 U.S.C. § 1983. *See* Dkt. No. 24, Memorandum and Order, dated February 20, 2018; *see also* Dkt. No. 31, Memorandum and Order on Motion for Partial Reconsideration, dated April 6, 2018.

6. The only remaining Defendants in this action are the City and Bradley as Defendants Michael Gala and "John and Jane Does" were dismissed with prejudice. *See* Dkt. No. 24, Memorandum and Order, dated February 20, 2018.

**B. Plaintiff's Appointment to the Fire Department of the City of New York**

7. Plaintiff self-identifies as African-American. *See* Dkt. No. 16, FAC ¶¶2, 14.

8. On January 30, 2013, Plaintiff was notified that he passed Firefighter Examination 2000 and that the Fire Department of the City of New York ("FDNY") was ready to begin the process for him to be accepted into the FDNY Fire Academy and become a Probationary Firefighter ("PFF"). *See* Letter from Dean Tow to Henry Bresilien, dated January 30, 2013, attached as Ex. "A" to the Declaration of Kerrin A. Bowers, dated May 9, 2019, ("Bowers Decl.")[1]; *see also* Notice of Examination Firefighter Exam No. 2000 ("NOE No. 2000"), Ex. B.

9. Plaintiff was appointed to the FDNY off of a "Priority Hire" list, which arose out of the *United States v. City of New York*, 07-CV-2067 (E.D.N.Y.). *See* Dkt. No. 26, Answer ¶35, dated March 8, 2018.

10. On July 22, 2013, Plaintiff signed a letter specifying the conditions for completing Probationary Firefighter School ("PFS"). *See* Conditions for Completion of FDNY Probationary Firefighter School, signed by Henry Bresilien on July 22, 2013 ("Conditions Letter"), Ex. C.

11. The Conditions Letter provides that the PFF must demonstrate proficiency with all physical fitness standards outlined in the Firefighter Candidate Physical Preparation

---

[1] Unless otherwise indicated, references to "Ex." are to the exhibits which are annexed to the Bowers Decl., submitted in support of Defendants' Motion for Summary Judgment.

Guide and that the PFF "must successfully pass a fifth-grade firefighter medical evaluation administered by the FDNY near the completion of [the PFF's] probationary period" and that "[f]ailure of any portion or portions of this medical evaluation, as determined by the FDNY Chief Medical Officer, can be grounds for medical disqualification and result in automatic termination of employment with the FDNY." *See* Conditions Letter, Ex. C.

12. The Conditions Letter provides that successful completion of PFS does not mean that a PFF has attained tenure in the position of Firefighter. *See* Conditions Letter, Ex. C.

13. The Conditions Letter provides that "[i]n order to attain and maintain tenure in the position of Firefighter, [the PFF] must comply with all applicable requirements of the City of New York, the FDNY, and the FDNY Oath of Office." *See* Conditions Letter, Ex. C.

14. Plaintiff signed the Conditions Letter, showing that he understood all applicable requirements. *See* Conditions Letter, Ex. C.

15. Plaintiff testified that one of the requirements to be a firefighter is fitness. *See* Deposition Testimony of Plaintiff Henry Bresilien, taken on October 4, 2018 ("Pl. Tr."), Ex. D at 30:3 –30:5.

16. On July 29, 2013, Plaintiff was appointed to the position of PFF with the FDNY. *See* Pl. Tr., Ex. D at 35:6 – 35:7; *see also* Dkt. No. 16, FAC ¶¶1, 19; *see also* Dkt. No. 26, Answer ¶19.

17. As a priority hire, Plaintiff was subject to a one-year probationary period. *See* Pl. Tr., Ex. D at 33:22 – 34:1, 106:9 – 106:20, 107:12 – 107:14.

18. Pursuant to applicable personnel rules and regulations of the City of New York, a member's probationary service is extended by the time the member does not perform the

duties, i.e. being on limited duty status and medical leave. *See* Personnel Rules and Regulations of the City of New York ("N.Y.C. Personnel R."), Ex. E at 5.2.8(b).

19. Pursuant to such rules and regulations of the City of New York, the agency head may terminate the employment of the probationer at any time during such additional period. *See* N.Y.C. Personnel R., Ex. E at 5.2.8(b).

### C. FDNY Probationary Firefighter School at the Fire Academy

20. On July 29, 2013, Plaintiff began training as a PFF at the PFS. *See* Pl. Tr., Ex. D at 35:1 – 35:7.

21. Plaintiff was 42-years old when he began training at the PFS. *See* Pl. Tr., Ex. D at 46:7 – 46:14.

22. Plaintiff testified that 320 individuals were in his PFS class. *See* Pl. Tr., Ex. D at 37:18 – 37:19.

23. On August 1, 2013, Plaintiff submitted a resignation letter to Administrative Chief, Rory Houton, stating the following: "Thank you for giving me the opportunity to be a Probationary Fire Fighter. There is no doubt in my mind that being a firefighter is what I wanted to be. When I woke up this morning, August 1, 2013, I realized the chance given to me has come too late because of my current age and I did not expect the training to take the toll it did on my body. If the chance had been given to me twelve years ago, I would have had a greater chance at success and hopefully had made a bigger difference in my life. However, I had a great experience and enjoyed my time while I was there with the other trainees. I tried to give it the best I could, but I wish all my former Probationary Fire Fighters and every other individual at the academy success. Thank you for the opportunity." *See* Letter from Henry Bresilien to Chief Houton, dated August 1, 2013, Ex. F; *see also* Pl. Tr., Ex. D at 40:19 – 40:22.

5

24. Plaintiff testified that he had a good experience at the PFS. *See* Pl. Tr., Ex. D at 47:2 – 47:6.

25. On August 1, 2013, Plaintiff signed a memo of resignation, effective 9:00 A.M. on August 2, 2013. *See* Memo from Henry Bresilien to Fire Commissioner Salvatore J. Cassano, dated August 21, 2013, Ex. G.

26. Plaintiff testified that after he submitted his resignation letter, an unidentified Captain with the FDNY contacted him and stated that he spoke to the FDNY Commissioner and that the Commissioner wanted him to return to the PFS immediately. *See* Pl. Tr., Ex. D at 42:11 – 42:20.

27. On August 2, 2013, Chief Rory Houton requested that Plaintiff's resignation be cancelled as Plaintiff was remaining active. *See* Email from Rory Houton to FDNY members, dated August 2, 2013, Ex. H.

28. Plaintiff was permitted to withdraw his resignation and return to the PFS. *See* Pl. Tr., Ex. D at 43:3 – 43:4.

29. Plaintiff testified that there were priority hires that passed training at PFS. *See* Pl. Tr., Ex. D at 116:13 – 116:14.

30. The PFS classes in 2013 commenced on January 14, 2013 and July 29, 2013. *See* Declaration of Stephen Sullivan, dated March 4, 2019 ("Sullivan Decl."), Ex. I at ¶6.

31. The PFS classes in 2014 commenced on January 27, 2014, July 14, 2014, and December 29, 2014. *See* Sullivan Decl., Ex. I at ¶7.

**D. FDNY Bureau of Health Services and Fitness for Duty Determinations**

32. Because of the physically and mentally demanding nature of their duties, firefighting personnel are monitored for their fitness for duty. The Bureau of Health Services

("BHS"), which is staffed with physicians, nurses, and other medical professionals, performs this monitoring. *See* Declaration of Kerry Kelly, MD, dated December 19, 2018 ("Kelly Decl."), Ex. J at ¶5.

33. The Chief Medical Officer supervises physicians, nurses, and other medical professionals within the BHS. *See* Kelly Decl., Ex. J at ¶3.

34. FDNY's physicians perform medical examinations and evaluate whether and when a firefighter is fit to perform firefighting duty. *See* Kelly Decl., Ex. J at ¶6.

35. In addition to periodic examinations, firefighting personnel are medically evaluated by the BHS when they sustain any injury or become ill. *See* Kelly Decl., Ex. J at ¶7.

36. Firefighting personnel who are medically evaluated by the BHS are accorded one of three duty statuses: (1) full duty; (2) light duty; or (3) medical leave. *See* Kelly Decl., Ex. J at ¶8.

37. Firefighting personnel who are accorded light duty status due to a medical issue are not capable of performing full duty, but are medically able to perform temporary administrative duty, while he or she are recovering from his/her illness or injury. *See* Kelly Decl., Ex. J at ¶9.

38. Firefighting personnel on light duty generally are placed in an administrative assignment that does not involve firefighting. *See* Kelly Decl., Ex. J at ¶10.

39. In making such assignments, consideration is given to the restrictions on physical tasks determined by the BHS based on the medical condition of the firefighting personnel. The tasks that firefighting personnel in light duty assignments perform include, but are not limited to, messenger duties, clerical functions, phone operations, maintenance work, security detail, hydrant inspections and building inspections. *See* Kelly Decl., Ex. J at ¶11.

40. The light duty assignments are intended to afford the member an opportunity to recuperate from his or her illness or injury, while utilizing the services of an employee who would otherwise be on paid medical leave. *See* Kelly Decl., Ex. J at ¶ 12.

41. Firefighter personnel in full duty status are able to physically perform all the duties of his or her position. *See* Kelly Decl., Ex. J at ¶13.

42. Firefighting personnel who are medically unable to perform either full duty or light duty are placed on medical leave. *See* Kelly Decl., Ex. J at ¶14.

43. Firefighting personnel on medical leave or light duty are scheduled for periodic examinations by the BHS physicians. *See* Kelly Decl., Ex. J at ¶15.

44. If the BHS physicians determine that firefighting personnel have recovered from his or her illness or injury and are capable of physically performing all the duties of a firefighter, the firefighting personnel will be returned to full duty status. *See* Kelly Decl., Ex. J at ¶16.

45. Determinations with respect to designations of the duty status of firefighting personnel (i.e., light duty, medical leave, or full duty) are solely within the discretion of the BHS physicians. *See* Kelly Decl., Ex. J at ¶17.

46. Pursuant to FDNY's policies and procedures, a PFF who is placed on medical leave or light duty status by the BHS prior to his or her completion of the PFS, and is subsequently returned to full duty status, performs non-firefighting duties while on full duty until the commencement of the next PFF class. *See* Sullivan Decl., Ex. I at ¶5.

47. If a PFF is unable to return to full duty status, the PFF is subject to termination, despite a referral to, appearance in front of or evaluation by the BHS Physician

Board (formerly referred to as the 3 Physician Board) concerning the Probationary Firefighter's fitness for duty. *See* Kelly Decl., Ex. J at ¶18.

48. Thomas Bradley was not involved in the medical board process with FDNY. *See* Deposition Testimony of Thomas Bradley, taken on October 24, 2018 ("Bradley Tr."), Ex. K at 16:2 – 16:5.

49. Thomas Bradley did not perform evaluations of PFFs while he was at BHS because PFFs assigned to BHS were assigned there due to medical incapacities and were not performing the job of a firefighter. *See* Bradley Tr., Ex. K at 20:9 – 20:16.

**E. Plaintiff's Medical History with FDNY and Fitness for Firefighting Duty**

50. On August 6, 2013, Plaintiff sustained an injury while at the PFS. *See* Member Injury Report (CD-72), Ex. L; *see also* Pl. Tr., Ex. D at 36:15 – 36:17, 39:23 – 40:2.

51. Specifically, Plaintiff reported that, when he was operating a charged hose line during a PFS exercise, he felt pain in the lower back and scraped both his knees. *See* Member Injury Report (CD-72), Ex. L; *see also* Pl. Tr., Ex. D at 39:11 – 39:13.

52. Plaintiff was treated by EMS and taken to Metropolitan Hospital. *See* Member Injury Report (CD-72), Ex. L; *see also* Pl. Tr., Ex. D at 39:14 – 39:15.

53. Plaintiff was referred to BHS in August 2013. *See* Pl. Tr., Ex. D at 103:11 – 103:18.

54. Plaintiff was granted medical leave as a result of the injuries he sustained at PFS. *See* Member Injury Report (CD-72), Ex. L; *see also* Pl. Tr., Ex. D at 48:20 – 48:22; *see also* FDNY Bureau of Health Services Examination Report on Pl. ("BHS Pl. Exam. Report"), dated August 7, 2013, Ex. M at FDNY 000231.

55. On August 7, 2013, a BHS physician examined Plaintiff and noted that Plaintiff reported back pain and abrasions of his anterior knees. *See* BHS Pl. Exam. Report, dated August 7, 2013, Ex. M at FDNY 000231.

56. On August 9, 2013, a BHS physician examined Plaintiff and noted that Plaintiff reported that he "does not feel able to continue training at this point." *See* BHS Pl. Exam. Report, dated August 9, 2013, Ex. M at FDNY 000230.

57. On August 12, 2013, a BHS physician examined Plaintiff and noted that Plaintiff reported that he was "unable to run or jog" and "does not feel ready to return to training." *See* BHS Pl. Exam. Report, dated August 12, 2013, Ex. M at FDNY 000229.

58. Plaintiff was placed on medical leave by physicians within the BHS for approximately seven days, effective August 6, 2013 until August 13, 2013. *See* Henry Bresilien FDNY Medical History ("Pl. Med. History"), Ex. N; *see also* BHS Pl. Exam. Report, dated August 7, 2013 – August 12, 2013, Ex. M at FDNY 000229 – FDNY 000231; *see also* Dkt. No. 16, FAC ¶39.

59. On August 12, 2013, Plaintiff was placed on light duty, effective August 13, 2013. *See* BHS Pl. Exam. Report, dated August 12, 2013, Ex. M at FDNY 000229.

60. On August 13, 2013, Plaintiff received a light duty assignment in the clinic of BHS, performing administrative work. *See* Pl. Tr., Ex. D at 49:11 – 49:13; *see also* Dkt. No. 16, FAC ¶40; *see also* Dkt. No. 26, Answer ¶40.

61. Plaintiff was placed on light duty by physicians within the BHS for approximately sixty-nine days, effective August 13, 2013 until October 21, 2013. *See* Pl. Med. History, Ex. N; *see also* BHS Pl. Exam. Report, dated August 12, 2013 – October 18, 2013, Ex M at FDNY 000219 - FDNY 000229.

62. In October 2013, Plaintiff was assigned to the Brooklyn Borough Command. *See* Dkt. No. 16, FAC ¶41; *see also* Dkt. No. 26, Answer ¶41.

63. On October 18, 2013, a BHS physician examined Plaintiff and placed him on full duty, effective October 21, 2013. *See* BHS Pl. Exam. Report, dated October 18, 2013, Ex M at FDNY 000219; *see also* Dkt. No. 26, Answer ¶42.

64. Plaintiff was on full duty from October 21, 2013 until December 2, 2013. *See* BHS Pl. Exam. Report, dated October 18, 2013, Ex M at FDNY 000219; *see also* Pl. Med. History, Ex. N.

65. On December 3, 2013, Plaintiff informed a BHS physician that he experienced headaches, cough and shortness of breath the day before and was transported to the emergency room. *See* BHS Pl. Exam. Report, dated December 3, 2013, Ex M at FDNY 000218.

66. Plaintiff also informed a BHS physician that he was treated with medication and told to follow up with a Pulmonologist. *See* BHS Pl. Exam. Report, dated December 3, 2013, Ex. M at FDNY 000218.

67. On December 3, 2013, a BHS physician examined Plaintiff and placed him on medical leave. *See* BHS Pl. Exam. Report, dated December 3, 2013, Ex M at FDNY 000218.

68. Plaintiff was on medical leave for approximately ninety-eight days, effective December 2, 2013 until March 10, 2014. *See* Pl. Med. History, Ex. N; *see also* BHS Pl. Exam. Report, dated December 3, 2013 – March 8, 2014, Ex. M at FDNY 000209 – FDNY 000218.

69. In December 2013, Plaintiff made numerous visits to the BHS where he indicated that he was experiencing shortness of breath. *See* BHS Pl. Exam. Report, dated December 6, 2013 – December 21, 2013, Ex. M at FDNY 000213 – FDNY 000217.

70. On December 11, 2013, a BHS physician examined Plaintiff and noted that Plaintiff had a "recent asthma exacerbation." *See* BHS Pl. Exam. Report, dated December 11, 2013, Ex M at FDNY 000216.

71. On January 4, 2014, a BHS physician examined Plaintiff and noted that Plaintiff was seen in the emergency room and treated for an asthma exacerbation, and as a result of a positive Methacholine Challenge Test ("MCT") on December 31, 2013, BHS diagnosed Plaintiff with reactive airways disease and advised him to take medication. *See* BHS Pl. Exam. Report, dated January 4, 2014, Ex. M at FDNY 000212.

72. On January 12, 2014, a BHS physician examined Plaintiff, who was still experiencing shortness of breath, and determined that the positive MCT made him unfit for firefighting duty and continued him on medical leave. *See* BHS Pl. Exam. Report, dated January 12, 2014, Ex. M at FDNY 000211.

73. On February 15 and March 8, 2014, a BHS physician examined Plaintiff, who reported that he was still experiencing shortness of breath, and subsequently prescribed Plaintiff Albuterol and Symbicort. *See* BHS Pl. Exam. Report, dated February 15, 2014 and March 8, 2014, Ex M at FDNY 000210 and FDNY 000209.

74. On March 8, 2014, a BHS physician examined Plaintiff, determined that he was unfit for full duty, and, after examination, changed his duty status to light duty, effective March 10, 2014, in which he remained until the time of his termination. *See* Pl. Med. History, Ex.

N; *see also* BHS Pl. Exam. Report, dated March 8, 2014 – December 24, 2014, Ex M at FDNY 000201 – FDNY 000209.

75. On July 14, 2014, Plaintiff was notified via letter concerning an appearance before the BHS Physician Board on July 16, 2014. *See* Letter from Dr. Kerry J. Kelly to Henry Bresilien, dated July 14, 2014, Ex. O.

76. Plaintiff continued to see physicians in the BHS after July 16, 2014. *See* Pl. Tr., Ex. D at 99:16 – 99:17; *see also* BHS Pl. Exam. Report, dated August 27, 2014 – December 24, 2014, Ex M at FDNY 000201 – FDNY 000204.

77. On August 27, 2014, a BHS physician examined Plaintiff and noted that "the overall clinical picture and testing [is] consistent with asthma." *See* BHS Pl. Exam. Report, dated August 27, 2014, Ex. M at FDNY 000204.

78. Plaintiff testified that someone with asthma cannot perform the duties of a Firefighter. *See* Pl. Tr., Ex. D at 92:22 – 92:24.

79. Plaintiff was on medical leave for 105 days and on light duty for 379 days. *See* Pl. Med. History, Ex. N.

80. The majority of Plaintiff's time with the FDNY was spent on light duty or medical leave. *See* Pl. Tr., Ex. D at 102:2 – 102:4.

81. Plaintiff did not complete his training at the PFS. *See* Pl. Tr., Ex. D at 39:14 – 39:15, 48:12, 48:25 – 49:2.

82. Plaintiff spent less than a month and a half at FDNY on full duty. *See* Pl. Med. History, Ex. N.

83. Plaintiff's medical history during his employment as a PFF with the FDNY included persistent respiratory symptoms which he described and physical findings which were not compatible with full duty firefighting. *See* Kelly Decl., Ex. J at ¶19.

84. Based upon former Chief Medical Officer with the BHS Dr. Kerry Kelly's review and experience, Plaintiff would never be able to perform the duties of a firefighter with the FDNY as a result of his medical condition. *See* Kelly Decl., Ex. J at ¶20.

**F. Plaintiff's Termination**

85. On January 14, 2015, Plaintiff's services as a PFF with the FDNY were terminated. *See* Letter from Daniel A. Nigro to Henry Bresilien, dated January 14, 2015, Ex. P; *see also* Pl. Tr., Ex. D at 66:2 – 66:3; *see also* Dkt. No. 26, Answer ¶5.

86. Plaintiff was offered the opportunity to resign, which he declined. *See* Memo from Rory Houton to Bureau of Personnel, dated January 14, 2015, Ex. Q.

87. Plaintiff was on light duty at the time of his termination. *See* Pl. Med. History, Ex. N.

88. Plaintiff did not file an Article 78 proceeding in state court challenging his termination. *See* Pl. Tr., Ex. D at 105:25 – 106:6.

**G. The Firefighter Examination Lawsuit**

89. On May 14, 2013, the United States Court of Appeals for the Second Circuit vacated the intentional discrimination (disparate treatment) finding against the City in the Firefighter Examination Lawsuit. *See United States, et al. v. City of New York, et al.*, 717 F.3d 72 (2013).

Dated: New York, New York
May 9, 2019

                **ZACHARY W. CARTER**
                Corporation Counsel of the
                  City of New York
                Attorney for Defendants
                100 Church Street, Room 2-139
                New York, New York 10007
                (212) 356-2473
                kbowers@law.nyc.gov

                By: /s/
                    Kerrin A. Bowers
                    Assistant Corporation Counsel

TO:    Peter J. Gleason
        935 S. Lake Blvd., Suite 17
        Mahopac, New York 10541
        Tel: (212) 431-5030
        pjgleason@aol.com